**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21-CR-30137-DWD** |
| | ) | |
| **MARIO A. FOSTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Now before the Court is Defendant Mario A. Foster's *pro se* Motion for a Sentence Reduction "based on changes in the crack laws" and the "293 other amendment[s] to the sentencing guidelines." (Docs. 69 & 72). Defendant's pleadings suggest that he is seeking a reduction under the "Equal Act" and/or under 18 U.S.C. § 3582(c) and Amendment 821. *Id*. The Government has responded in opposition. (doc. 74). For the reasons set forth herein, the Motion is **DENIED**.

## I.    BACKGROUND

On July 22, 2021, officers responded to an emergency call regarding the parental abduction of an infant. (Doc. 49, p. 3). According to the complainant (the infant's mother), Defendant came to her residence and took the infant. *Id*. Officers soon located the Defendant's vehicle and conducted a traffic stop. *Id*. Defendant and the infant were in the vehicle. *Id*. Upon removing the infant from his car seat, officers located two bags containing suspected narcotics. *Id*. Laboratory analysis revealed the bags contained 13.7 grams of cocaine base and 10.054 grams of fentanyl. (Doc. 49, p. 4). Defendant entered a

guilty plea to one count of Possession with Intent to Distribute a Controlled Substance (Cocaine Base) and one count of Possession with Intent to Distribute a Controlled Substance (Fentanyl). (Docs. 20 & 44).

The Presentence Investigation Report calculated the converted drug weight, resulting in a base offense level of 20. (Doc. 49, pp. 4-5). However, because Defendant received a Chapter Four enhancement for being a career offender, his offense level was increased from level 20 to level 32. (Doc. 49, p. 5). After Defendant's acceptance of responsibility, his offense level was reduced to 29 with a criminal history category of VI. (Doc. 49, pp. 5 & 11). Defendant's criminal history category was based on a preliminary criminal history score of ten that was enhanced due to Defendant's status as a career offender. (Doc. 49, pp. 8-10, 11). Accordingly, Defendant's criminal history category was raised from V to VI. *Id.* Defendant's advisory guideline range was 151 to 188 months' imprisonment. (Doc. 49, p. 19). Defendant was sentenced to 156 months as to each count, to be served concurrently. (Doc. 59).

## II.    DISCUSSION

### A.    Amendment 821[1]

On November 1, 2023, a multi-part criminal history amendment designated as Amendment 821 in Appendix C to the *Guidelines Manual* became effective. Part A of the

---

[1] After Defendant filed his motion, the Court issued Administrative Order 362. Administrative Order 362 allows for the appointment of a Federal Public Defender to facilitate the adjudication of *pro se* motions seeking a sentence reduction pursuant to Amendment 821. In the instant case, the Court declines to request an appearance by the Federal Public Defender. First, as provided in that Administrative Order, individuals are not entitled to the appointment of counsel for such motions. Second, here, appointment would be futile. The record clearly demonstrates that Defendant is not entitled to relief under Amendment 821.

amendment addresses status points, decreasing them by one point for individuals with seven or more criminal history points and eliminating status points for those with six or fewer criminal history points. Subpart 1 of Part B creates a new § 4C1.1 guideline that provides a decrease of two offense levels for "Zero-Point Offenders" (those with no criminal history points) whose offense did not involve specified aggravating factors. Parts A and B, subpart 1 of the criminal history amendment both have retroactive effect.

To be eligible for a reduction under Part A, Defendant must have received two points for being on some form of supervision when his crime of conviction occurred. Defendant, however, received zero status points. (Doc. 49, pp. 5-14). Thus, he is not eligible for a sentence reduction under Part A. Defendant is also ineligible for a reduction under Part B. Defendant received ten criminal history points, and he was sentenced as a career offender. Thus, he is not a zero-point offender, and is not entitled to a reduction under this provision.

Other than referencing "293" guideline amendments, Defendant does not specify any other amendment that might impact his sentence, and the Court is not aware of any. Accordingly, to the extent that Defendant seeks a sentence reduction under Amendment 821 or under any other unspecified guideline amendment, the motion is **DENIED**.

## B.    Equal Act

Defendant also seeks relief pursuant to the EQUAL Act (Eliminating a Quantifiably Unjust Application of the Law Act of 2021) and attorney General Merrick Garland's statement regarding future Department of Justice sentencing

recommendations. The EQUAL Act was a Congressional bill that sought to eliminate the federal sentencing disparity between drug offenses involving crack cocaine and powder cocaine, reducing the crack cocaine/powder cocaine ratio from 18:1 to 1:1. *See* H.R. 1693, EQUAL Act of 2021.[2] The Department of Justice endorsed the passage of the EQUAL Act. *See* The Statement of the U.S. Department of Justice Before the Committee on the Judiciary, United States Senate, For a Hearing Entitled: Examining Federal Sentencing For Crack and Power Cocaine, at 2 (June 22, 2021) ("The disparity in federal cocaine sentencing policy has been the most visible symbol of racial unfairness in the federal justice system for almost 35 years, and it is time to eliminate it.").[3] The House passed the EQUAL Act in 2021. *Id.* But, in the Senate, the bill currently is referred to the Committee on the Judiciary. *See* S.79, EQUAL Act of 2021.[4] Thus, the bill has not been enacted.

In December 2022,[5] Attorney General Merrick Garland issued a memorandum to all federal prosecutors regarding sentencing disparities in cases involving distribution of cocaine base (also known as "crack cocaine") and powder cocaine. Attorney General Merrick Garland, <u>Memorandum for All Federal Prosecutors</u> (Dec. 16, 2022) ("DOJ Memorandum").[6] The DOJ Memorandum indicates that "[t]he Justice Department supports elimination of the crack-to-powder sentencing disparity and has

---

[2] Available at https://www.congress.gov/bill/117th-congress/house-bill/1693.
[3] Available at http://cdn.cnn.com/cnn/2021/images/06/22/equal.act.testimony-.final.pdf.
[4] Available at https://www.congress.gov/bill/117th-congress/senate-bill/79/all-info.
[5] Defendant was sentenced approximately four months prior to issuance of the DOJ Memorandum. (Doc. 59).
[6] Available at https://www.justice.gov/media/1265321/dl?inline.

testified before Congress in support of the EQUAL Act, S. 79, which would remove that disparity." DOJ Memorandum at 4. Further, pursuant to the DOJ Memorandum, when prosecutors are handling crack cocaine cases, they are encouraged to:

> advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine. Where a court concludes that the crack cocaine guidelines apply, prosecutors should generally support a variance to the guidelines range that would apply to the comparable quantity of powder cocaine.

*Id.* at 5.

The DOJ Memorandum makes clear, however, that the policies contained therein are "internal office procedures" that are "intended solely for the guidance of attorneys for the government[,]" and they are "not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States." *Id.* at 5 n.4. Thus, the DOJ Memorandum has no binding effect on the judiciary.

First, considering the above, Defendant's request for a sentence reduction under the Equal Act and/or under the DOJ Memorandum is premature. *See* e.g., *United States v. Ford*, No. CR 10-20129-07-KHV, 2023 WL 1434302 (D. Kan. Feb. 1, 2023) (rejecting argument for sentence reduction under the EQUAL Act, noting that "[p]roposed legislation itself is insufficient to grant wholesale relief to all defendants who could potentially benefit from such legislation"); *Palermo v. United States*, No. 1:17-CR-290-GHW, 2022 WL 14129780, at *2 (S.D.N.Y. Oct. 22, 2022) (possibility of defendant receiving benefit through proposed EQUAL Act not extraordinary and compelling circumstance for sentence reduction). Further, to the extent that Defendant suggests failure to

implement the policy directives contained in the DOJ Memorandum violates his equal protection rights, the Seventh Circuit has considered and rejected similar challenges to crack cocaine mandatory minimum sentences and advisory guidelines. *See United States v. Moore*, 644 F.3d 553, 557-58 (7th Cir. 2011).

Second, because Defendant was sentenced as a career offender, even if the Equal Act and the DOJ Memorandum were applicable, they would have no impact on Defendant's sentence. Defendant possessed 10.054 grams of fentanyl and 13.7 grams of cocaine base (crack). (Doc. 49, p. 5). The converted drug weight[7] was 25.13 kilograms for the fentanyl and 48.92 kilograms for the cocaine base, for a total converted drug weight of 74.05 kilograms. *Id.* A total converted drug weight of 74.05 kilograms provides for a base offense level of 20. (Doc. 49, p. 4 citing USSG §2D1.1(c)(10). But because Defendant was a career criminal, his offense level increased to 32.

If the Court were to convert the cocaine base to powder cocaine, the total converted drug weight would be reduced to 27.87 kilograms[8] with a corresponding base offense level of 16. USSG §2D1.1(c)(12) (providing a base offense level of 16, if the offense involved at least 20 kilograms, but less than 40 kilograms of converted drug weight). But even with this reduction, because Defendant is a career offender, his offense level would

---

[7] When a drug case involves multiple controlled substances, USSG 2D1.1, Application Note 8(B) provides a means to determine a single offense level for the various substances. This application note sets a converted drug weight (formerly marihuana equivalents) for each gram of commonly encountered controlled substances. The sum of the converted drug weights is then used to determine the base offense level under the drug quantity table found at 2D1.1(c).

[8] The converted drug weight would be 25.13 kilograms for the fentanyl and 2.740 kilograms for the powder cocaine, for a total converted drug weight of 27.87 kilograms. *See* https://guidelines.ussc.gov/apex/r/ussc_apex/guidelinesapp/drug-conversion.

still be 32. As a result, despite any crack/powder guideline disparity, given Defendant's career offender status, his base offense level is 32, meaning the EQUAL Act and the DOJ Memorandum do not impact Defendant's sentence.

Accordingly, to the extent that Defendant is seeking relief under the EQUAL Act or the DOJ Memorandum, the Motion is **DENIED**.

### III.   CONCLUSION

For the reasons set forth herein, Defendant Mario A. Foster's Motion for a Sentence Reduction (Doc. 69 and 72) is **DENIED**.

**SO ORDERED.**

Dated: April 5, 2024

<u>s/ *David W. Dugan*</u>
DAVID W. DUGAN
United States District Judge